### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
## CIVIL RICO COMPLAINT

| | |
|---|---|
| Glenn Joseph Hopkins and | ) |
| Cindy Sue Hopkins deceased | ) |
| Plaintiff; | ) |
| v. | ) Case No: _____ _____ |
| Christian Homes Inc | ) |
| Timothy Phillippe CEO of Christian Homes Inc | ) |
| Lewis Memorial Christian Village, | ) |
| Cochran Management Services inc, | ) |
| Law firm of Thomas, Mamer, and Haughey; | ) |
| Bruce Warren, Senior partner | ) |
| Illinois Workers Compensation Commission, | ) |
| Michael Latz, Chairman of the Illinois Workers | ) |
|  compensation commission. | ) |
| Lisa Langley, | ) |
| Dee Dee Wagner, | ) |
| Laurie Hill, | ) |
| Paula Ryan, | ) |
| Amy Zayer, | ) |
| Doctor Michael Watson, | ) |
| Dr, Trudeau, | ) |
| Nancy Lindsay, | ) |
| Mario Basurto, | ) |
| Two John Does of the | ) |
|  workers compensation commission | ) |
| William Gallagher | ) |
| Eric Chovanec | ) |
| Illinois Department of Insurance Regulation | ) |
| William Blumthal | ) |
| Hospital Sisters | ) |
| Country Companies Insurance Company. | ) |
| Barbara Collins | ) |
| Kurt M Koepke | ) |
|  Kurt F. Bock | ) |
| Mary Bauman | ) |
| Defendants | ) |

1

## JURISDICTION

This District court has subject matter jurisdiction over the parties under 28 U.S.C.§1331, in re: The Racketeering and Corrupt Organizations Act, (RICO) 18 U.S.C.§1962(a), (b), (c) and (d), Conspiracy to violate Civil Rights 42 U.S.C§1983, and Title II of the Americans with Disabilities Act, 42 U.S.C.§§12131–12165, and supplemental jurisdiction in re: 28 U.S.C.§1367(a) for the State law and State Tort claims.

I.

Parties in this civil Action

Plaintiff

Plaintiff Glenn Joseph Hopkins, on behalf of himself and the estate of Cindy Sue Hopkins deceased.

Plaintiff address.

Transient: No current address. forwarding Mailing address is 92 Lucky Horseshoe, Riverton Illinois 62561   217  816  3354

Defendants

1. Timothy Phillippe,  in his personal capacity as CEO Christian Homes Inc, 622 Emerson Road, Suite 310,  St. Louis, MO 63141.

2. Christian Homes Inc, 200 N. Postville Drive, Lincoln, Illinois

3. Lewis Memorial Christian Village, 3400 West Washington Street, City of Springfield, Sangamon County of Illinois.

4. Cochran Management Services inc, 2 East Main Town Centre  building, suite 200 Danville Illinois.

4. Law firm of Thomas, Mamer, and Haughey, 30 Main Street, Suite 500, Champaign Illinois.

5. Bruce Warren, 30 Main Street, Suite 500, Champaign Illinois

6. Illinois Workers Compensation Commission, 100 W. Randolph St. #8-200 Chicago, IL 606C1

7. Michael Latz, 100 W. Randolph St. #8-200 Chicago, IL 60601 in his personal capacity as Chairman of the Illinois workers compensation commission .

8. Lisa Langley, address unknown.

9. Dee Dee Wagner, address unknown,

10. Laurie Hill, address unknown,

2

11. **Paula Ryan**, 2 East Main Town Centre  building, suite 200 Danville Illinois, .

12. **Amy Zayer**, 2 East Main Town Centre  building, suite 200 Danville Illinois.

13. Doctor **Michael Watson**, 320 E Carpenter St Suite 1A  Springfield, IL 62702, .

14. **Dr, Trudeau**, 340 W Miller St Suite LEVEL, Springfield, IL 62702.

15. **Nancy Lindsay**, 100 W. Randolph St. #8-200 Chicago, IL 60601  in her personal capacity as an arbitrator of the Illinois workers compensation commission.

16. **Mario Basurto,** 100 W. Randolph St. #8-200 Chicago, IL 60601 in his personal capacity as a commissioner of the Illinois workers compensation commission.

17. Two John Doe as **unidentified commission members.** 100 W. Randolph St. #8-200 Chicago, IL 60601  in their personal capacity as a commissioners of the Illinois workers compensation commission.

18. **William Gallagher** 100 W. Randolph St. #8-200 Chicago, IL 60601 in his personal capacity as an arbitrator of the Illinois workers compensation commission.

19. **Eric Chovanec.** 30 Main Street, Suite 500, Champaign Illinois.

20. **Illinois Department of Insurance Regulation**, 320 W Washington, Springfield, IL 62767.

21. **William Blumthal** 320 W Washington, Springfield, IL 62767 in his personal capacity as a chairman of the Illinois Department of Insurance Regulation.

22. **Hospital Sisters**, 4936 LaVerna Road, Springfield, Illinois 62707 operating **St. Johns Hospital**; 800 E. Carpenter Street, Springfield, IL 62769 .

23. **COUNTRY Financial as parent, and COUNTRY Mutual Insurance Company a subsidiary.** 1701 N Towanda Ave, Bloomington, IL 61701-2057 .

24. Kurt F. Bock. in his personal capacity as CEO of COUNTRY Financial as parent, and COUNTRY Mutual Insurance Company a subsidiary 1701 N Towanda Ave, Bloomington, IL 61701-2057.

25. Barbara Collins, address unknown.

26. **Kurt M. Koepke**, 2341 W. White Oaks Drive, Suite A, Springfield Illinois.

27. Mary Bauman, address unknown.

## II.

## STATEMENT OF THE FACTS OF THE CASE

### [1]

*That the following is stated fact for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, was never contested or disputed before an arbitrator, see* Complaint Evidence Affidavit exhibit 2:

Glenn Joseph Hopkins, hereinafter identified as Hopkins, a Disabled person under Title II, *Complaint Evidence Affidavit exhibit 1, page 2*, was a material witness to the events in controversy as the husband of Cindy Sue Hopkins, duly married in full accordance with Illinois law on April 3, 1977, with the marriage in effect on 2/5/2010, when on that date Cindy Hopkins died intestate from her injuries.

### [2]

*Hopkins stated the case facts in Bills of particular that was never denied, nor disputed in all subsequent workers compensation proceedings, and was never disputed before an arbitrator, see* Complaint Evidence Affidavit exhibit 2, page 3 *to 14 as to paragraphs 2 to 14,* thus admitted by acquiescence, that

Post Mortem, in the legal capacity as heir and administrator of her estate, Hopkins showed before the Illinois Workers Compensation arbitrators an employer/employee relationship existed between Cindy Hopkins, hereinafter referred to as Cindy, and the 1983/RICO enterprise identified as Christian Homes Inc, under the control of the 1983/RICO person identified as Timothy Phillippe, CEO, with the Corporate offices of the enterprise located at 200 N. Postville Drive, Lincoln, Illinois, by its subsidiary, Lewis Memorial Christian

4

village, hereinafter identified as Lewis, located at 3400 West Washington Street, City of Springfield, Sangamon County of Illinois, from June 12 2002 until Cindy was terminated on October 12, 2005.

[3]

*That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, was never contested or disputed before an arbitrator, see* Complaint Evidence Affidavit exhibit 2, page 3-14 as to *paragraph 3:*

*In* 2004, a new administrator hired the 1983/RICO person identified as Lisa Langley, (hereinafter referred to as "Langley") to be Housekeeping supervisor, who in or about January of 2005, began making unfair changes to the workplace rules resulting in complaints by Cindy for unfair labor practices to the administrator.

[4]

*That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, and was never contested or disputed before an arbitrator, see Complaint Evidence Affidavit exhibit 2, page 3-14 as to paragraphs 4-5, and admitted by acquiescence that:*

Langley retaliated by *modification* of conditions of Cindy's employment resulting in the aggravated battery of Cindy that disabled and killed her in that;

(a) Cindy was a small slender woman, yet Langley assigned Cindy in May 2005 to perform three to five deep cleans of patient rooms each day, a serious undue hardship when all other Lewis employees did an average of one.

(b) Langley in May of 2005 assigned only Cindy, thus disparate treatment, to empty kitchen garbage cans that required Cindy, by herself, to lift and carry multiple bags of garbage that weighed on average in excess of 70 to 100 pounds and push them up into a construction style dumpster.

(c) That by July 1, 2005 Cindy began experiencing pain in her prior injured left shoulder. Cindy reported this pain in her shoulder to Langley, and requested relief from the harsh job conditions. Langley refused, telling Cindy

5

she should quit if the work was hurting her. Cindy appealed to the administrator about this hazing. The administrator stated that Cindy *should just find another job.* Before she could do so:

[5]

*That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, and never contested or disputed before an arbitrator, see* Complaint Evidence Affidavit exhibit 2 page 3-14 as to *paragraph 6,* and is admitted by acquiescence that:

On July 27, 2005, at approximately 10: 30 AM, while Cindy was performing an assigned deep clean, she felt a popping sensation in her mid chest. An intense pain in her mid-thoracic back followed this popping sensation, and it became hard to breathe, so Cindy immediately went to the assistant supervisor Ann Caruthers, reported this injury, and requested permission to see a doctor. The assistant supervisor refused, stating that Cindy had to see a doctor on her own time as per Langley's policy. Cindy was required to complete her assigned work duties of her shift with an injury that was later determined to have been a disabling neuromuscular skeletal disorder that included a diaphragmatic rupture and hernia of 1/3 of her stomach into her chest cavity.

[6]

*That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, was never contested or disputed before an arbitrator, see Complaint Evidence Affidavit exhibit 2, page 3-14 as to paragraph 7, and admitted by acquiescence that:*

After work on that same day of July 27, 2005, Hopkins took Cindy to St. Johns ER, where her workplace injury to her mid back was reported to the ER doctor.

(a) The popping sensation and subsequent back pain was reported by Cindy, as having occurred while performing a deep clean under a table.

(b) After an exam and an x-ray, but no MRI, the ER doctor found that this reported injury was a work place injury, and diagnosed Cindy's "reported

6

workplace injury" as *a mid-thoracic back sprain*. Complaint Evidence Affidavit exhibit 4,  page 19-27.

[7]

*That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, was never contested or disputed before an arbitrator, see Complaint Evidence Affidavit exhibit 2, page 3-14 as to paragraph 8, thus admitted by acquiescence that:*
Cindy called Lewis upon her return home from the ER, on July 27, 2005, and reported the work place injury and diagnosis. Lewis ordered Cindy to see the 1983/RICO person identified as Doctor Sunil K. Bansal, for the exclusive treatment of Cindy's "reported workplace injury". <u>Cindy was told she had No choice of doctors.</u>

(a) On July 29, 2005, Dr. Bansal examined Cindy. Cindy reported the injury as a popping feeling in her mid back approximately between the bottom the left shoulder blade, and her midthoracic spine, followed by breathing problems. Cindy reported pain from that point in her mid back that she had felt the pop sensation that started back pain that radiated upwards and into her arm. Bansal recorded the reported workplace injury to her mid back, *but falsely reported this accident as having caused injury to the back and neck by moving a bed*, <u>when it was actually reported as just a back injury having occurred while bent over doing a deep clean under a table</u>, and omitted the breathing problem, Complaint Evidence Affidavit exhibit 5, page 29-33, *Dr Bansal was not informed by Cindy of any neck injury, and there was no neck injury claim by Cindy. Note the letter to Bansal as the only existing record of what transpired.*

(b) Dr. Bansal reported Cindy's pain from her prior injured left shoulder, but did not find a new  injury to the arm.

(c) Dr. Bansal *confirmed that the mid-back injury complained of was work related*, and assigned Cindy to light duty work. Dr. Bansal did confirm the ER diagnosis of a mid thoracic back sprain *but* Dr. Bansal falsely *reported*

7

*Cindy did not report breathing problems when she had*, thus he was falsifying medical records compromising care, see the letter to Dr. Bansal, noting Bansal fled the country after news of Cindy's death.

[8]

That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, and was never contested or disputed before an arbitrator, see Complaint Evidence Affidavit exhibit 2, page 3-14 as to paragraph 9, that:

Langley made an injury report, but then fired Cindy on July 30, 2005 *for reason of Cindy failing to provide someone to work in her place due to her injury*. After notice of an illegal termination, the administrator reinstated Cindy. Cindy was assigned to light duty.

[9]

That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, and was never contested or disputed before an arbitrator, see Complaint Evidence Affidavit exhibit 2, page 3-14 as to paragraph 10,

That it is admitted that on August 8, 2005, Mr. William Shaffer timely filed an adjustment of claim for the reported workplace injury to Cindy's mid thoracic back, *and the aggravated left shoulder injury*.

[10]

That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, and was never contested or disputed before an arbitrator, see Complaint Evidence Affidavit exhibit 2, page 3-14 as to paragraph 11, and admitted by acquiescence that:

Dr. Bansal refused to perform a medically necessary MRI to determine Cindy Hopkins reported workplace injury to her mid back, and fraudulently stated that:

(1) that the swelling was too bad to perform an MRI,   and,

(2) Dr Bansal stated that Cindy should receive "snake oil treatment" in the form of Hydrocortisone shots to relieve the swelling and pain in her mid back

8

and thus allow Cindy to return to full time work duties when Cindy had an as yet undiagnosed diaphragmatic rupture and hernia, And thus;

(3) For reason of being unable to obtain the necessary care and treatment for Cindy's workplace injury from Dr. Bansal, Glenn Hopkins made an appointment for Cindy under Illinois workers compensation rule 8(a) with the 1983/RICO person identified as Dr. Michael Watson, a specialist in orthopedics located at 320 E Carpenter St Suite 1A  Springfield, IL 62702, where the following acts transpired allegedly in the late afternoon after work on August 23, 2005 but all records were made to disappear, leaving only the letter to Watson as evidence of what transpired in that;

(a) Cindy reported the circumstances of the workplace injury to her mid thoracic back to Dr. Watson that occurred while cleaning the underside of a table, with Glenn Hopkins present as a witness.  *see* Complaint Evidence Affidavit exhibit 7, page 39-46 as to *a* Letter to Watson.

(b) Cindy specifically told Dr. Watson *that she was there about her mid-thoracic back injury* already prior diagnosed by two doctors as a workplace injury, in which Cindy described *the intense pain in her mid-back, and described about how it was hard for her to breathe.*

(c) Hopkins had pointed out to Dr. Watson, at that same place and time, the baseball sized swollen area on Cindy's back at approximately T-12, which was to the left side of the spine at T-12 and three inches under the tip of the left shoulder blade, and thus very obvious the injury was not in the neck!

(d) Hopkins and Cindy both stated to Dr. Watson as to how Dr. Bansal refused to do an MRI of this area, *despite the pain and hardship Cindy had in breathing, Bansal claiming no reason to do an MRI* because the swelling was too great. Dr. Watson stated that swelling had no effect on an MRI, and agreed it was medically necessary to do an MRI of this swollen area. *Dr. Watson stated that he had to confirm the WC claim with Lewis first.*

[11]

*That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, and was never contested or disputed before an arbitrator, see* Complaint Evidence Affidavit exhibit 2, page 3-13 as to *paragraph 12,* and thus admitted by acquiescence that:

Dr. Watson, *after contacting Lewis,* then reported to Cindy by telephone on August 24, 2005, the work comp claim was lawfully denied based on Lewis representations, and then committed fraud that injured her, alleged as follows:

(A)

Christian Homes Inc is self insured, and the 1983/RICO person of Timothy Phillippe as CEO oversees and operates the enterprise identified as Cochran Management Services inc. aka CCSMI to administer this self insurance. The 1983/RICO persons identified as Amy Zayer and Paula Ryan of CCSMI did:

(1) First choose to approve of Cindy's claim, *see* Complaint Evidence Affidavit exhibit 8, page 47 for which she was treated by Dr. Bansal, and as the facts show, *had two doctors confirm that the injury was a workplace injury,* and;

(2) When allegedly apparent the injury was a disabling Neuromuscular skeletal disorder and Cindy had sought her own doctor, CCSMI agents Amy Zayer and Paula Ryan denied the claim and insurance coverage shown *by striking out the prior approval,* Complaint Evidence Affidavit exhibit 8, page 47 for:

(a) no stated reason,

(b) without notice to Cindy, barring her from Medicare and Medicaid without cause or right,

(c) without sending Cindy to an IME, and

(d) without an IME report and;

(e) Amy Zayer stated Cindy's workers comp claim was lawfully denied by phone message to Dr. Watson, logged and recorded, Complaint Evidence

10

Affidavit exhibit 8, page 48-50, known to be unlawful when *there had been no notice to Cindy or IME basis for the denial.*

(B)

Doctor Watson had examined Cindy on August 23. This record has been made to disappear. It is admitted by acquiesce that Doctor Watson made a statement of his conducting a medical exam on August 24 however, and referred a copy to CCSMI, *see* Complaint Evidence Affidavit exhibit 2, page 3-14. This statement was a fraudulent medical record of an exam for the 24th, *that replaced the actual exam of the 23rd.* From this fictitious exam Watson had an MRI done at Cindy's cost, but the *MRI* was of Cindy Hopkins *Cervical spine*, and not of her midthoracic spine, *when the MRI of her thoracic spine was medically necessary,*. This was falsification of records in that:

(1) Dr. Watson stated in his "report"  that Cindy's "chief complaint of pain" was in her arm and neck, which cannot possibly be true when *Dr. Watson should not have known of Cindy's prior neck injury from 1985, while at the same time Watson was omitting everything Cindy had reported!* Cindy had not raised  any neck or arm injury claim to Dr. Watson, yet the patient intake form was modified by someone *to include the attachment points of the left shoulder and neck, which is obvious  records tampering.*

(2) This knowledge that Watson displayed of the prior neck injury required being informed by an attorney with connections to the Workers compensation commission in order to find these long closed cases, and obtain the information from the prior injury records, evidence of ex parte contact resulting in the fraudulent medical records.

(3)

Dr. Watson in his suborned report, which is an alleged mail fraud, *omitted all reference to the fist sized swelling in Cindy's mid- back, omitted all reference to her difficultly in breathing, and omitted all reference* that Dr Watson had examined the swollen area, and omitted that he had said *a midthoracic MRI should be done to find out why Cindy had a difficulty in*

11

*breathing.* His exam report omits his statement of the claim having to be approved by Lewis! Watson claims a neck injury as a primary complaint with tingling all the way to her fingertips, *which is based on information not provided by Cindy or consistent with her filed workers compensation claim!*

[12]

*That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, and was never contested or disputed before an arbitrator, see Complaint Evidence Affidavit exhibit 2, page 3-14 as to paragraph 14, thus admitted by acquiescence that:*
Dr. Watson then referred Cindy to the 1983/RICO person identified as Dr. Edward Trudaue, *who refused to allow Glenn Hopkins to be present at any time in his interview and examination of Cindy.* Dr. Edward Trudaue concealed the neuromuscular skeletal disorder as he;

(a)   stated in his report of the patient interview that Cindy's work comp injury claim concerned "an arm injury".

(b)   has omitted any reference to Cindy Hopkins intense mid-back pain, and her difficulty in breathing.

(c)   stated in his report that he could find no evidence of Cindy having sustained a workplace injury to her arm.

(d)   has omitted any reference to Cindy Hopkins intense mid-back pain, and her difficulty in breathing which was fraud by omission.

(e)   stated in his report that he could find no evidence of Cindy having sustained a workplace injury to her arm, which is fraud due to the known prior injury to the left shoulder and no arm injury claim in Cindy's actual filed workers compensation claim. '

[13]

*That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26 was never contested or disputed before an arbitrator, see Complaint Evidence Affidavit exhibit 2, page 3-14 as to paragraph 13 that;*

Dr. Watson stated that he could find no evidence of any injury supporting Cindy's work comp claim to her neck and arm, known to be contrary to Cindy Hopkins actual workers compensation claim, *and fraudulently omitting that her injury for which she sought diagnostic treatment was a midthoracic back injury and difficulty in breathing,* which was fraud by omission. *It is admitted this difficulty was later confirmed as caused by a diaphragmatic rupture and hernia of 1/3 rd of her stomach into her chest cavity, thus the omission concealed the actual injury contributing to her death.* There was allegedly no legitimate way he could have known of the prior 1985 injury to the neck, and the shoulder injury had been dropped from the case before August 23, 2005 thus not in question. His reports and letter in response was alleged Mail fraud as they were mailed to Cindy and CCSMI.

[14]

*That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, and was never contested or disputed before an arbitrator, see* Complaint Evidence Affidavit exhibit 2, page 3-14 as to *paragraph 14,* and admitted by acquiescence that:

The 1983/RICO persons identified as Timothy Phillippe, as CEO of the enterprise identified as Christian Homes that operates Lewis, by agents of Christian Homes, and the 1983/RICO persons of the enterprise identified as the Law firm of Thomas, Mamer, and Haughey, under direction of the 1983/RICO person of senior partner Bruce Warren, *for no reason other than a practice to prevent payment of benefits for unjust enrichment,* denied Cindy's workplace injury claim without written notice to her of the denial, without an IME, and did so despite the fact two doctors had prior confirmed this workplace injury, in that:

{1.} Dr Bansal submitted medical bills to CSMI in August, which were denied payment by mail based on grounds the work comp claim was lawfully denied under workers compensation law, when it was known that it could not have been, as there had been no notice or an IME.

13

{2.} Dr. Watson had been informed by phone by Lewis on August 24, 2005 that the work comp claim was lawfully denied, *which was prior to his exam in September, thus his fraudulent exam could not be an IME.*

{3.} That after Warren entered his appearance in the case, thus in control, there was a meeting on October 10, 2005, which was reported to Hopkins by Cindy and later Cindy's sworn charge to the EEOC:

-a- In that meeting, *see* Complaint Evidence Affidavit exhibit 2, page 3-14 Cindy reported to the EEOC that the Lewis agents identified as the 1983/RICO persons D.D. Wagner, Lisa Langley, and Laurie Hill, questioned Cindy about why she was refusing to accept the recommended Hydrocortisone treatment by their chosen doctor, Dr. Bansal.

-b- They also allegedly discussed how Doctor Watson's "report" did not support Cindy's work comp claim.

-c- Cindy asked who had instructed Dr. Watson not to perform the requested MRI of Cindy's mid back, which the agents then refused to answer.

{4.} In a letter issued October 12, Lewis agent Laurie Hill stated Lewis would no longer accommodate her impairments from her injury and gave Cindy involuntary leave of absence without compensation under color of family leave, and terminated Cindy without an IME.

{5} Lewis then attempted to deny unemployment, *see* Complaint Evidence Affidavit exhibit 8, page 51 by claiming Cindy could not work due to *a non-work related injury,* of which (1) there is no record of a non work related injury, (2) with two doctors reports showing a workplace injury, and (3) no IME finding on the reported injury *not being work related.*

[15]

*That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, and was never contested or disputed before an arbitrator, see* Complaint Evidence Affidavit exhibit 2, page 3-14 as to, *paragraph 15,* and thus admitted by acquiescence that:

14

Due to denial of the workplace injury claim without Notice to Cindy, and wrongful termination from employment, Cindy was deliberately and knowingly:

-1- Denied access to insured medical care and

-2- Denied access to Medicare and Medicaid for reason of lack of written notice and:

-3- Required Cindy to find what medical care she could obtain for her neuromuscular skeletal disorder as an indigent pauper which injured her in that:

(1) Cindy Hopkins being fully disabled by her work place injury, had to pay her own cost to obtain medical care <u>without the means to do so</u> as she could not work, or receive public aid for lack of notice, and was receiving only minimal paupers care *insufficient to stop the pain or to save her life,*

(2) It is admitted that Capitol Community Health Care allegedly *provides only basic medical services to low income unemployed people who do not have insurance in Springfield Illinois.* Cindy's personal care doctor identified as Dr. Edgard Cumpa ordered an MRI of Cindy's mid thorax *<u>out of medical necessity in November of 2005 to determine why Cindy had swelling and breathing trouble due to the mid back injury from the workplace injury</u>*.

(3) Examination of the MRI of Cindy's mid-thorax "discovered" the 11 cm rupture of the diaphragm, and the large hernia endangering her life. *see* Complaint Evidence Affidavit exhibit 4, page 28.

(4) Capitol community could not arrange for specialist care in orthopedics for diagnostic and treatment of her neuromuscular skeletal disorder, as no alleged specialist was available who would examine Cindy's injury without prior payment of $3.000.00 *<u>since it was not a medical necessity to preserve life to treat this disorder,</u>* and for reason that Cindy was denied insurance coverage under work comp, and denied Medicare/Medicaid for reason of lack of written notice. A request for written notice so as to obtain MEDICARE was ignored, *see* Complaint Evidence Affidavit exhibit 10, page 53.

[16]

*That for reason of filed Bills of particulars in workers compensation proceedings that were never denied thus admitted in all proceedings and under FRCP 26, and was never contested before an arbitrator, see Complaint Evidence Affidavit exhibit 2, page 3-14 as to paragraph 16, it is thus admitted by acquiescence that:*

William Shaffer was Cindy's Attorney until compromised by the conspiracy to commit fraud that made him a material witness, depriving Cindy of Counsel. Hopkins is not licensed to practice law.

[17]

*That for reason of filed Bills of particulars in workers compensation proceedings that were never denied thus admitted in all proceedings and under FRCP 26, and was never contested before an arbitrator, see Complaint Evidence Affidavit exhibit 2, page 3-14 as to paragraph 16,*

The case was submitted to Todd Strong. The November MRI discovery of the ruptured diaphragm that had resulted in a hernia and was part of Cindy's mid back neuromuscular skeletal disorder, was raised to Bruce Warren under a 19B1 Petition by Todd Strong. In response, Warren claimed in official records that Cindy's work comp claim was "an injury to her arm and neck", which was an obvious fraud by simple comparison to the adjustment of claim! Todd Strong then resigned because the claim of Christian Homes and Warren in defense of the 19(b), *was supported by the fraudulent medical records of the person identified as Dr. Watson*, making the cost of prosecuting the claim impossible for Cindy. Notice of this fraud was disclosed to the 1983/RICO enterprise identified as the Illinois Department of Insurance regulation which twice refused to take action, *see* Complaint Evidence Affidavit exhibit 14, page 58.

This was irremediable due to alleged defects of law in that:

(a) To overcome this medical records fraud by respondent in workers comp under rule 19 in December of 2005, required experts that were not available due to an indigence that was caused by wrongful termination, denial of insurance coverage, and denial of Medicare/Medicaid for lack of notice, despite a request for notice giving reason why the claim was denied.

16

(b) After Todd strong resigned, Patty Hayes took the case, only to be disbarred, after which <u>No other attorney would dare take the case</u> pre or post mortem! This was due to alleged public knowledge of corruption of the workers compensation arbitrators and commission, with the enterprise Law firm of Thomas, Mamer, and Haughey openly bragging on the net *of self insured employers not having to pay TTD, and of their close working relations with arbitrators, commissioners, state and Federal Judges* see Complaint Evidence Affidavit exhibit 11, page 54-55.

(c) To overcome this fraud in workers comp under 19B allegedly required experts that were not available due to indigence from denial of Medicare and Medicaid for reason of lack of notice.

[18]

*That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, and was never contested or disputed before an arbitrator, see* Complaint Evidence Affidavit exhibit 2, page 3-14 *as to paragraphs 17 to 18,* it is admitted by acquiescence that:

The first surgery by Dr Hazelrigg to repair the ruptured diaphragm from the reported workplace injury was March 7 of 2006, followed by a motor vehicle accident on April 16 of 2006 that *admittedly undid the surgery and thus contributed to her death.*

(1) This motor vehicle accident occurred *before the original workplace injury surgery could heal*, and while severe as it totaled the vehicle, would not have ruptured the surgery repair on Cindy's ruptured diaphragm, <u>if the surgery had been timely performed in August or September of 2005.</u> and:

(2) The motor vehicle accident would not have created the following chain of inevitable deadly circumstances in that:

(A.)

But for the alleged lack of timely proper treatment and surgery due to denial of the claim without notice and without a doctor's exam:

17

(1) Cindy plausibly would not have been subjected to reinjury of her diaphragm in the motor vehicle accident as the surgery would have been done timely and thus would have healed prior to the accident, and

(2) Hopkins would not have been forced to *helplessly watch as Cindy suffered a lingering and painful death due to a reinjury that could not be diagnosed and treated timely due to deprivation of insured medical care.*

(3) *Cindy and Glenn would not have had to wait for two more years of agonizing pain before the second rupture injury was discovered by Dr. Torgenson, see* Complaint Evidence Affidavit exhibit 2, page 3-14 and

(4) Cindy would not have admittedly suffered a binary post surgical infection in the second surgery required to repair the second rupture of her diaphragm from her workplace injury as a result of the car accident before it healed, *see* Complaint Evidence Affidavit exhibit 2, page 3-14. There was a long delay that had allegedly weakened her body to where she could not survive the latent poisoning of her liver by antibiotics and sepsis in that:

(B.)

This binary infection from the second surgery allegedly became septic when Cindy was prematurely discharged by the 1983/RICO enterprise St. Johns Hospital for reason of no work-comp insurance or Medicare, and this allegedly triggered an autoimmune response known to cause organ failure that contributed to tne fatal injury of Cindy Hopkins liver, and:

(C.)

That it is admitted by acquiescence that no checks for impaired liver function from the symptoms reported, that allegedly show there may have been moderate sepsis, and no checks were made for impaired liver function *known to occur in some cases from the use of Levoquinn, Ciprofloxin and Vancomycin* that had been necessary to treat the binary infection by St. Johns, the vital test was canceled for no reason other than no coverage by work comp insurance, Medicaid or Medicare resulting in undetected liver failure for reason of:

18

[19]

*That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, and was never contested or disputed before an arbitrator see* Complaint Evidence Affidavit exhibit 2, page 3-14 as to *paragraph 18,*

That it is admitted that St. Johns (1) did not give notice to Cindy's physician of the use of these dangerous antibiotics, and (2) failed to inform of the known attendant risk of liver failure from these antibiotics, and (3) subsequent organ failure occurred from liver poisoning due to the antibiotics.

[20]

That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, and was never contested or disputed before an arbitrator, *see* Complaint Evidence Affidavit exhibit 2, page 3-14 as to paragraph 19 and thus admitted by acquiescence:

*that the cause of death for Cindy Hopkins was liver failure 12 months after Surgery* which is admitted as consistent with Sepsis, Levoquinn and Ciprofloxin poisoning of the Liver and applicable to this case in that it is admitted and not disputed that:

-1- The Coroner found "Fatty Changes to the Liver".

-2- Cindy Hopkins did not drink except for special occasions. In cases where the patient does not drink alcohol regularly, this "Fatty Changes to the Liver" is a known symptom of Steatohepatitis, a NASH based autoimmune hepatitis form of cirrhosis known to be caused by Ciprofloxin, Vancomycin, and by moderate to severe Sepsis. Qualified doctors can testify to the authenticity of this. The records show from the autopsy[1] in Cindy's case that:

(a.) No evidence exists of a genetic disorder to cause "liver failure". For the record, Cindy has an identical twin, who has no symptoms of "liver failure".

(b.) No known toxic chemical exposure, other than the exposure of the patient to Levoquinn, Ciprofloxin and Vancomycin, all known to cause liver failure.

---

[1] There is a question of admissibility of coroner's reports.

19

(c.) There were no signs of any currant nonsocomial infection to indicate currant sepsis at time of death.

(d) Cindy Hopkins had a known thyroid disorder that was being treated with synthroid, as does her alleged twin. Cindy was allegedly treated with dangerous antibiotics identified as Levoquinn, Ciprofloxin, and Vancomycin, allegedly known to the medical profession world wide to cause liver failures within 12 months of use, with increased hazard to those on Synthroid. This use of these antibiotics *was indisputably justifiable and necessary* to save her life from the post op binary infection. However post use conduct was not Justified in that;

(e). Cindy was discharged by St. Johns *for reason of no work comp insurance* or Medicare/Medicaid from the denial of the workers compensation claim without notice, discharged *before the binary infections were gone*, and the tests for *alleged liver poisoning were cancelled*. There was no follow-up blood tests for screening for impaired liver function.

(f) Cindy was on oxygen for nearly two months at home, and suffering fevers from the postoperative infection. Cindy had no access to other doctors about this post op illness.  Cindy admittedly died from liver failure caused by post surgical complications in the second surgery to repair the workplace injury that was required when the first surgery to repair was undone by the intervening car accident before it could heal.

*Post Mortem*

[21]

*That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, and was never contested or disputed before an arbitrator, see* Complaint Evidence Affidavit exhibit 3, page 3-14 as to *paragraph 20,* it is admitted by acquiescence that:

After Cindy's premature death from liver failure, that the RICO enterprise identified as St. Johns due to an unknown RICO person or persons, who after denying a request for a directed autopsy, agreed to do a full frontal view MRI

20

which would allow a qualified forensic doctor to determine if the diaphragmatic rupture was causally related to the reported workplace injury to the midthoracic back that resulted in a disabling neuromuscular skeletal disorder. *St John's 1983/RICO agents then assured Glenn Hopkins by telephone* that this MRI had been done when they released the body for cremation. *see* Complaint Evidence Affidavit exhibit 12, page 56/57. Hopkins relied upon this statement by phone by St. Johns that claimed the MRI was done, and had Cindy cremated due to the denial of funeral and death benefits by Lewis. *Hopkins later discovered this MRI was never done after the body was cremated, when he tried to get the report.* The St John agents then stated that because Cindy's workers comp was denied, the exam was not done. Hopkins then demanded to know *why he was told it had been done* by telephone, when **it actually was** not done, as otherwise Hopkins would never have had her body cremated, but Hopkins was then escorted off the premises by security.

[22]

  *That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested,* thus admitted that Hopkins is a disabled person on a fixed income, *see* Complaint Evidence Affidavit exhibit 1, page 2, *and blocked by state action from preparing and proving the case and state action in the case in that:*
Hopkins was denied accommodation *throughout all the proceedings from September 2010 until May 13, 2014,* in violation of Title II of the ADA starting with Tobin, as a disabled poor person by the intentional denying of transcripts despite repeated requests in known violation of rule 20. This prejudiced the prosecution of the action in that:
  ·1·

[a]

Beginning in September 2010, several motions were before the commission proceedings so as to enforce discovery subpoenas. The facts in the first Bill of

21

Particulars were never disputed. The withheld transcript of the September 7th 2010 hearing  shows that Hopkins case was obstructed in that:

(1). That it was admitted in all proceedings and under FRCP 26, and was never contested or disputed before an arbitrator, Complaint Evidence Affidavit exhibit 2, page 3-14   that Respondents have never filed anything in opposition. Bruce Warren admittedly verbally stated to Tobin on September 7, 2010 that Hopkins was using the subpoena to "obtain medial records".

(2) *It is admitted* Hopkins pointed out in rebuttal that *Cindy's Work comp claim and access to medical care for her reported injury, was denied for undisclosed reasons by undisclosed persons at Lewis. Hopkins further pointed out that someone at Lewis had interfered with Cindy's medical care, and then terminated her for being unable to work due to her injury.* Hopkins told Tobin that he sought by subpoena the identity of the persons who made this decision, and proof that the written denial, which would have required a doctor's examination, was a report that did not exist! Hopkins stated that he knew this report did not exist as *Hopkins had all the reports of every doctor Cindy had ever seen in this cause.*

(3) It is admitted Warren then stated to Tobin that Cindy Hopkins work comp injury was "*disputed, and had been denied lawfully and though it was unfortunate Cindy died, it was not Lewis fault.*"

{3-1} It is admitted that Hopkins asked Warren "Based on what?"

{3-2} It is admitted that Tobin then asked Warren to produce the Form 12 report .

{3-3} It is admitted that Warren proceeded to another room to search his case files for this alleged *report that was known did not exist.*

{3-4} It is admitted that Warren then submitted a withdrawal of the claim, stating that he was only doing so because he lacked the record on hand.

(b)

It is admitted that Tobin ordered Warren *to turn over all documents concerning Cindy's employment, the form 12 doctors report as to the denial of*

22

*her claim, denial of access to care, and termination.* Warren was also ordered to disclose the records of what he had given to Hopkins attorneys, and copies of all the employee files. That disclosure has never happened.

-2-

*That it was admitted in all proceedings and under FRCP 26, and was never contested or disputed before an arbitrator, see* Complaint Evidence Affidavit exhibit 2, page 3-14 as to *paragraphs 21 to 22,* that:

In subsequent proceedings on November 1, 2010, Hopkins submitted a demand for payment of the $10.000.00 death benefit, funeral benefits of $8.000, and a sanctions motion due to the Lewis Counsel Warren's refusal to comply with the subpoena: it was alleged that Warren turned over blank paper instead of actual records, refused to turn over employment records proving the admitted aggravated battery, and refusal to identify the parties at Christian Homes who denied the workers compensation claim. Hopkins was pointing out to Tobin that the case was a wrongful death tort based on a conspiracy to commit work comp fraud resulting in death under 4(d);

(1) There is no transcript, thus impossible to prove, though it is admitted, that Tobin ignored the fraud committed by Warrens misleading claim in a letter that *Cindy had refused to see a doctor of Lewis choice*, when this sending of Cindy to an IME had never transpired, and Cindy was seeing the only doctor of Lewis choice, Dr. Bansal. This was false when Warren was stating "that is why there is no form 10 report", *see* Complaint Evidence Affidavit exhibit 2, page 3-14.

(2) Tobin, *despite having been shown* that the work comp injury claim and all medical care was denied by self insured Lewis in violation of rule 4(c) and (d) with proactive assistance of counsel, *refused to consider that this denial of the claim without a Doctors exam and report was "a fraud" despite that rule 4(c), (d), (h), and 8.7(j) stated this conduct as unlawful.*

(a) Tobin stated that he believed that there was no conspiracy, naively stating no attorney would commit fraud as alleged by Hopkins.

23

(b) Tobin dismissed the claim that the records had been withheld, naively claiming that no attorney would lie to him about this.

(c) Tobin then refused to order Lewis to pay for the specialist doctors *knowing that*:

{1} Tobin knew he could not deny access to doctors without an IME report, and knew no such IME report existed. It was medically Necessary *to forensically examine Cindy's records to determine whether the reported injury was a workplace injury, whether the injury permanently disabled her, and whether the unlawful denial of access to proper care resulted in her death.* 19(c) uses the states special funds to cover these costs,

{2} Tobin further said it was Hopkins obligation to obtain access to these doctors at his own expense when both 8(a) and 19(c) both mandate Tobin could not deny review of medical records without an IME.

{3} Tobin refused to order payment of the death benefit, *see* Complaint Evidence Affidavit exhibit 2, page 3-14, stating it was a life insurance policy that had to be enforced in state court, *when known as a job benefit that could only be awarded in workers comp.* Funeral benefits would only be paid once Hopkins had proven the workplace injury caused the death, even though Christian Homes admitted and did not contest this fact, thus requiring forensic review that was being denied without an IME report.

{4} That the fraud division, informed by email of Tobin's conduct that was obstructing the case, forwarded that email to Tobin. Tobin recused himself, claiming Hopkins was "threatening him with federal court action".

[23]

*That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26, and was never contested or disputed before an arbitrator, see* Complaint Evidence Affidavit exhibit 2, page 3-14 as to *paragraphs 22 to 23,* that:

Tobin recused himself on or about December 6, 2010, and the case was set before a new arbitrator, the 1983/RICO person Neva Neil, with the hearings in Decatur Illinois. The matter was set for a call hearing before Neil on

24

February 28, 2011. Hopkins borrowed motor vehicle was then sabotaged the night before the hearing, by persons unknown placing a bolt into the cooling fan destroying the transmission from overheating while on his way to the hearing, preventing his making an appearance at the hearing call. Neil now deceased, was allegedly bribed as she dismissed this 2010 case for being over the redline in 2011 <u>when the redline would not have arisen until 2013!</u> Notice of this obviously fraudulent dismissal was received March 26, 2011 and took four months to compel reinstatement.

[24]

That it is admitted by acquiescence, *see* Complaint Evidence Affidavit exhibit 17, page 146/160. that the 1983/RICO person identified as Barbara Collins, as attorney for the 1983/RICO enterprise identified as COUNTRY Financial as parent, and COUNTRY Mutual Insurance Company a subsidiary, (Herein after identified as Country) located at 1701 Towanda Ave., P.O. Box 2100, Bloomington, McLean County, Illinois, obstructed justice in the MVA case, and this case while pending by:

(1) Withholding documents from Hopkins relevant to the severity of the accident which was an issue material to the WC action and the MVA,

(2) Tampering with the deposition to remove all references to the workers compensation action, and of her denial of access to records,

(2) Christian Homes admitted *Counsel* for Country had disclosed the documents concerning the MVA. Counsel for Country was Collins. A Criss Cross conspiracy allegedly arose by Collins enabling Christian Homes to use the evidence of the accident provided by Collins to claim the car accident caused death, thus furthering the ends of the criminal objective.

(3) Collins knew the denial of access to doctors in WC made it possible to defeat the wrongful death claim and failure to settle bad faith tort in the MVA case for reason of lack of evidence, and;

(4) Collins committed felony records tampering by fraudulent filing of records in that:

25

·1· Collins requested of Hopkins, as administrator of the estate handling the workers compensation case, a request to admit concerning the issues of Cindy's death, and a request for medical review, and provided an envelope so Hopkins could mail the documents back.

·2· Hopkins responded directly making a response to request to admit and denial of access to Dr. Hazelrigg for cause in that same envelope provided by Collins. Collins received the documents identified as Plaintiffs response to request to admit and Plaintiffs denial of authorization on April 4, 2013.

·3· Collins allegedly filed these documents in the court record along with a forged certificate of service in the Court record and the record shows Hopkins filed the documents which was felony records tampering by someone unknown, Complaint Evidence Affidavit exhibit 19, pages 183/199.

·4· Collins moved for Sanctions claiming that Hopkins had filed the documents in the record, had done so without signature of counsel, and had not served her claiming she had only discovered the filing by routine check.

·5· Only Hopkins and Collins had possession of the documents on April 4, 2013. Hopkins does not live in Springfield and without a motor vehicle, and had no means of filing the documents without an original signature on April 15, 2013. Hopkins contested this use of records turned over only to Collins Complaint Evidence Affidavit exhibit 20, pages 189/190, but having been filed in the Court record by someone without an original signature and could result in criminal prosecution of Hopkins for records tampering.

·6· This records tampering by Collins would benefit her client and principal Country, and further the ends of the conspiracy by Christian Homes *as a criminal conviction of Hopkins as to records tampering would terminate both cases*, and:

(5) That Collins either resigned or was terminated by Country for reason of the records tampering, but Country never disavowed this conduct.

(6) Wrongful death has liability damages averaging $800.000, but Country has refused to settle for the policy limit that would fairly cover *the partial*

26

*liability for wrongful death that exists above the policy limit for reason of Cindy's death,* and by appearance has adopted and in criss cross agreement with Christian Homes attempting profit thereof from the prior conspiracy by:

-a- Exploiting the RICO based fraud that Country knew had obstructed access to the medical review necessary to prove that the accident had undone the surgery resulting in Cindy's subsequent death, so as to avoid paying a justified claim in the MVA case on grounds of "lack of evidence".

-b- After Collins was terminated by Country, Country thereafter adopted the prior conspiracy objective of Collins and Christian Homes by unjustified refusal to settle a claim that would otherwise be above the policy limits *while knowing* this refusal enables the original conspiracy to benefit.

-c- The objective was for the same reason that Christian Homes had done so: Unjust enrichment by exploiting the spoliation caused by fraud, Hopkins cannot obtain medical review to prove the workplace injury and lack of proper medical care due to the fraud had killed her, thus enabling Country to avoid paying for wrongful death knowing that if the policy was paid Hopkins could obtain review to prove the conspiracy to commit fraud killed Cindy.

[25]

*That for reason of filed Bills of particulars in workers compensation proceedings that were never denied or contested, thus admitted in all proceedings and under FRCP 26,* and was never contested or disputed before an arbitrator,:

It is admitted that on December 8, 2011, Hopkins brought before the arbitrator identified as the 1983/RICO person Nancy Lindsay, {a known former commissioner} a motion to depose the co defendants/witnesses of the case, motion to order forensic review, and sanctions against Lewis et all for obstruction of the case in the denial of benefits pre and post mortem. These were parts of a pending October 19(b) petition with a second bill of particulars that Respondent did not at any time contest.

27

·1·

(a) There is no transcript provided as this was denied, thus impossible to prove, though it is admitted, that Lindsay in concert with the 1983/RICO person identified as Eric Chovanec denied deposing defendants and witnesses on grounds they could testify in the pretrial 19b hearing and be subject to cross examination.

(b) There is no transcript provided as this was denied, thus impossible to prove, though it is admitted that Lindsay was informed that Cindy's claim had been twice confirmed as a workplace injury but denied without notice and without an IME, in known violation of rules 4(c), 4(d), 4(h), and 8.7(j), and that Dr Watson had falsified records!

(c) There is no transcript provided as this was denied, thus impossible to prove, though it is admitted that Lindsay denied forensic review on grounds Cindy was dead, thus review was to be at Hopkins expense but did so knowing this review was intended under 8(a) and 19(c), <u>which uses special funds to cover these costs</u>, and could not be denied by any arbitrator without an IME report, which in this case did not exist.

(d) There is no transcript provided as this was denied, thus impossible to prove though it is admitted that Lindsay allegedly shifted the motion for sanctions to be heard on January 12, 2012.

·2·

*That it was admitted in all subsequent proceedings and under FRCP 26, and was never contested or disputed before an arbitrator,* admitted by acquiescence on Motion to Vacate, Appendix A, that:

On January 12, 2012, Nancy Lindsay in alleged collaboration with Eric Chovanec, admittedly conducted a pretext 19b hearing with intent to commit fraud upon the court and obstruct justice in this case in that:

(a) There is no transcript as this was withheld, thus impossible to prove, though it is admitted that *Chovanec has never filed any claim refuting or denying any contention or claim of Hopkins, thus the claims were not*

28

*equitably disputed.* They had to taken as true under rule 19 and equitable estoppels by acquiescence.

(b) There is no transcript provided as this was denied thus impossible to prove though it is admitted that Chovanec withheld all witnesses and co defendants  and prevented their testimony in the proceedings.

(c) There is no transcript provided as this was denied thus impossible to prove, though it is admitted that Lindsay allowed the withholding of witnesses and co defendants and proceeded to pre trial in the known absence of any person or persons on behalf of Christian Homes Inc.

·3·

Nancy Lindsay admitted by acquiescence on Motion to Vacate, Appendix A, that she did make the following judgments under 19(b) in that:

(A)

Lindsay stated in her fraudulent order that *Hopkins had not proven Cindy Hopkins workers compensation claim was denied*,  a known fraud in that:

1. There is no transcript provided, as this was denied, thus impossible to prove, though it is admitted that Evidence turned over by respondents in discovery, never contested, was ruled admissible by Lindsay, *thus she knew of the evidence, and this evidence was presented in the Presentation brief,* thus the evidence of admitted denial of the claim was known to Lindsay. This evidence *shows indisputably that the claim was admittedly denied and that Nancy Lindsay knew this was admitted fact.*

2. There is no transcript provided as this was denied, thus impossible to prove, though it is admitted that Respondent admitted in a letter presented in the Presentation brief, thus before and known to Lindsay at time of hearing, *that the claim had been indisputably been denied **and that notice of denial had not been given Cindy. Nancy Lindsay knew this was admitted fact!.***

3. That with the indisputable admissions by respondents in writing, which could not be challenged as it was not disputed by respondent that the claim

29

had been denied, it becomes *a stipulated fact.   Hopkins had no burden to prove the claim was denied as it was admitted, and this fact the claim was denied, had to be taken as true under both rule 19 and equitable estoppels!*

4. There is no transcript provided as this was denied, thus impossible to prove, though it is admitted that Lindsay deliberately claimed Hopkins had not proved the claim had been denied even though it was plainly admitted, a fraud upon the court voiding her judgment, while at the same time abrogating the statute 19(k) with alleged intent to avoid applying 19(K) penalties against Respondent, which defrauded Hopkins as a disabled beneficiary of $24.500.

(B)

That Lindsay under color of law as an arbitrator of the Illinois workers compensation commission deliberately sua sponte used a presurgical consultation report of a thoracic surgeon made prior to the first surgery to repair the hernia, as grounds to curtail TTD at 16 weeks, rather than the full 208 weeks,  knowing that the letter from the surgeon to Dr. Cumpa was not an IME report under rule 12, without an orthopedic examination performed, thus she defrauded Hopkins in violation of state and federal mail fraud statutes,  and unjustly enriched Christian Homes of $46.000.00.

(C)

That it is admitted by acquiescence that Lindsay fraudulently stated that Hopkins had not raised the issue of sanctions and thus no sanctions would be awarded,  which is alleged as fraud upon the court and obstruction of justice that unjustly enriched a criminal enterprise in that:

1. There is no transcript, thus impossible to prove, though it is admitted that Lindsay had been presented the Motion for sanctions filed with the commission on December 8, 2011, and rescheduled the hearing of the motion for sanctions for January 12, 2012.

2. Lindsay had the obligation to retain in her control the document identified as Motion for sanctions, but *apparently disposed of the document*

30

*without notice to Hopkins of her action*, preventing evidence of the raising of the issue of sanctions.

3. That it is admitted by acquiescence Lindsay omitted in her finding that the presentation brief did in fact raise the issue of sanctions thus the issue was raised and addressed, but has been deliberately omitted in her order.

4. That Lindsay had falsified her order about the issue of sanctions then published this false order, thus mail fraud, and avoiding applying justified 19(K) penalties against Respondent to defraud Hopkins.

(D)

Lindsay stated that Dr. Watson had not found any basis for Cindy Hopkins neck and arm injury claim, thus nothing was to be awarded as to these claims which was <u>an alleged overt act of</u> fraud <u>in using a known fraud</u> to commit fraud in that:

(1) Cindy Hopkins workers compensation injury claim was to her midthoracic back, with aggravation of a prior left shoulder injury. *There was no neck injury claim in the action*!

(2) Hopkins had presented a claim and evidence based on a second Bill of particulars filed with the commission and before the arbitrator that showed Dr. Watson was a co conspirator in the conspiracy to commit workers compensation fraud and had fabricated fraudulent medical records in alleged furtherance of a conspiracy· *a claim which was never disputed thus admitted under equitable estoppels*, and;

(3) That in the manufacture of the fraudulent record Dr. Watson had acted upon information he should never have had knowledge of, and use of ex parte communication is well known to be prohibited!

(4) That it is admitted by acquiescence that the issue of the neck and arm injury claim of Dr, Watson was raised *as an issue of fraud in the second Bill of particulars*, and (a) was not raised in the adjustment of claim as a claim, (b) was not raised as a claim by Hopkins in the Petition under 19(b)(1), and (c) nor had Respondents raised this claim as a defense, *thus it was only*

31

*before Lindsay as evidence of fraud and of the conspiracy, and she knew it to be a fraud.*

(5). That due to Lindsay's actions, Hopkins could not proceed further to a meaningful case outcome, thus Lindsay was knowingly defrauding the estate of $1.700.000.

[26]

Hopkins made an interlocutory appeal of the corrupted pretrial 19(b)(1) proceeding based on serious errors of the arbitrator to the commission, requesting a transcript for purpose of appeal and subsequent proceedings.

(1) While the official transcript was tendered for approval and signing, no actual transcript was supplied by the commission for retention in records.

(2) An Amended appellants brief for the interlocutory appeal, was filed within the time limits and before the commission with Hopkins brief clearly establishing the errors as grievous errors compromising the case.

(3) That a review hearing was held October 25, 2012, before the 1983/RICO persons identified as Mario Basurto, and two unidentified commission members, in which all the errors covered by the Appellants brief were presented, but no transcript of the hearing was provided to Hopkins despite request.

(4) That the commission allegedly ruled on October 29 to affirm the judgment of the 19(b) hearing without service of notice to Hopkins, thus denying access to circuit court review.

(5) That due to lack of service, Hopkins did not know of the judgment, nor able to timely appeal the judgment to the circuit court.

(6) Hopkins did not learn of the judgment until long after time to appeal had expired, and to date, has yet to be served that order of the commission by the commission. Nancy Lindsay admitted to this by acquiescence on Motion to Vacate, Appendix A.

[27]

That Hopkins filed a Motion to vacate that Nancy Lindsay admitted by acquiescence was resulting in fraud upon the court, felony fraud in the deprivation of benefits, and obstruction of justice with the commission, which was set for hearing October 12, 2013.

(1) That Lindsay refused to allow the motion to be heard on pretext grounds Motions to vacate do not exist in workers compensation.

(2) According to the transcript provided by Christian Homes, Exhibit of transcript is in appendix A, Hopkins pointed out that Motions to vacate do exist under the administrative code that regulates arbitration in Illinois, and cited case law supporting the concept that fraud upon the court, felony fraud by an arbitrator, and thus the obstruction of justice would be mandatory grounds to vacate by any reasonable honest person!

(3) Lindsay tacitly admitted to committing felony fraud, fraud upon the court and obstruction of justice, by stating that it did not matter as the commission had affirmed her.

(4) Hopkins pointed out that the commission had committed fraud upon the court in affirming her and denied due process by failing to serve notice of the judgment so it could not be reviewed by any state court, and again, Lindsay stated it does not matter as motions to vacate cannot be brought in workers compensation.

(5) Hopkins pointed out that due to her judgment, She had not heard this cause as a tort action. Hopkins reminded her that the case had been filed as a tort under rule 4(d), and she admitted that she had not heard it as a tort.

(6) As she had admitted to obstruction of justice, and was obstructing justice, Hopkins withdrew the motion to vacate as no point existed to proceed further in the face of criminal conduct.

33

[28]

It is Public Record that Hopkins filed formal criminal charges 12/3/2013 with the Springfield Police department and FBI, giving notice to the Sangamon County states attorney and Attorney General Madigan, against the parties identified in the charges as Arbitrator *Nancy Lindsay, commissioner Mario Basurto, Lisa Langley, D.D. Wagner, Laurie Hill, Amy Zaylor, Bruce Warren, Dr. Michael Watson,   two unknown members of the Illinois workers compensation commission, and unknown parties of Lewis Memorial Christian Homes Inc.*   Copy of Criminal Charges, Appendix A.

(1) Due to misrepresentation by Lindsay, Hopkins mistakenly believed Dr. Hazelrigg was participating in the RICO conspiracy to commit workers compensation fraud, which after his deposition on May 15, 2014, was determined to be false. The deposition proves Lindsay lied.

(2) That in follow up communication by telephone, the States attorney was so far declining to file criminal charges and prosecute the named defendants.

(3) That follow up communication by telephone to the FBI disclosed that while it was considered unconscionable, there was no intent to investigate and prosecute.

[29]

It is admitted by acquiescence and public record that after Lindsay left the case in ruins, Hopkins, has tried twice before two different arbitrators to rectify and mitigate the impact of fraud upon the court in that:

-A-

(1)

That Hopkins filed with the commission in December 2013  a Post trial motion for a ruling on evidence proving the tort set for setting a hearing date in the January call, which on that date and time, there is no transcript provided as this was denied, the arbitrator Pulia refused to set the motion for hearing by declaring no action for tort can be brought under rule 4(d).

34

Hopkins filed motion for recusal to protect the arbitrator from further compromising her integrity. Record of the motion to recuse appendix A

(2)

Hopkins served notices upon the 1983/RICO persons of the Governor, Chairman of workers comp, and head of the Fraud division of Insurance regulation, about the issue of fraud and the liability of the state officials from the misconduct that was obstructing proceedings and furthering the ends of a criminal enterprise in the commission of workers compensation fraud *see* Complaint Evidence Affidavit exhibit 14 page 88. The 1983/RICO person Supervisor William Blumthal of the Rico enterprise identified as the Illinois Department of insurance responded by telephone claiming that:

·1· Even though no insured employer could deny claims without an IME without penalty under rule 155 of the insurance code, Blumthal stated that no crime was committed by Christian Homes as a self insured employer in denying Cindy Hopkins claim without notice or an IME, even though subject to 19k sanctions, *claiming that self insured employers in compliance with rule 4(a) and (b) are not subject to penalty under rule 4(c) for refusing to provide insurance coverage for any reason*, then saying "and while it was unfortunate Cindy died, it was not unlawful." Hopkins pointed out in writing that this was a direct violation of the first amendment right to petition, And·

·2· That Blumthal also said it did not matter that when insured employers who refuse to provide insurance coverage without notice or an IME are subject to penalty under rule 155 of the Illinois Insurance Code and 19(k) sanctions. Blumthal stated that the regulatory provisions of Rule 4 are only to ensure compliance with the state requirements, not to regulate conduct of self insured's who are in compliance. Hopkins pointed out in writing this enabled self insured's who are in compliance to engage in conduct that insured employers and self insured's not in compliance are prohibited from doing thus this interpretation of Rule 4 violates both the equal protection clause of the 14th Amendment, and the special legislation clause.

35

·3· That despite notice, no action was taken either to prove it, disprove it, or take corrective action by the Governor, Chairman, or Dept of Insurance.

·B·

(1)

That Hopkins filed two combined motions with the commission for Forensic Review and for Restitution, and judicial Notice of the pending RICO action, which were to be set for hearing at time of call in May of 2014.

(2)

That at time and place of call, May 13, 2014, before the 1983/RICO person identified as Gallagher, *there is no transcript provided as this was denied thus it is impossible to prove that* judicial notice of the pending RICO action was presented and read, and Hopkins asked for the two motions to be set for hearing at a later date after the arbitrator had time to review the issues, which resulted in alleged obstruction in that:

(a) There is no transcript provided as this was denied thus impossible to prove that Gallagher refused to set a hearing date *and did so without a court reporter present.*

(b) Gallagher, despite the fact the motions were uncontested refused to set the hearing for motion for forensic review, instead choosing a summery consideration of the motion without review of the merits of the entire motion and memoranda, *see* Complaint Evidence Affidavit exhibit 13, page 58/59,

(c) Gallagher was informed that Cindy Hopkins claim had been denied without an IME due to a RICO based fraud, which denied her access to proper medical resulting in her death. Forensic review was recognized by Gallagher as necessary medical care to determine if Cindy Hopkins claim was a compensable injury that resulted in her death, but Gallagher summarily stated this was Hopkins obligation, as Gallagher refused to order the forensic review without an IME at the states expense under 19(c).

(d) Gallagher refused to order forensic review at the self insured expense under rule 8(a).

36

(e)  Gallagher knew Hopkins was a victim of fraud upon the court, and having the legal right to act pro-se, without a court reporter present, raised the issue of Hopkins practicing law without a license taken *as an implied threat of criminal prosecution unless Hopkins dropped his claims.*

(f)  For reason of this attempt of intimidation by Gallagher *for Hopkins having raised facts showing criminal operation of workers compensation proceedings with no reporter present*, Hopkins gave verbal notice he was taking the matter to federal court under RICO and 1983 and walked out on Gallagher and Chovanec.

(g) That Gallagher gave the Motions Hopkins had filed before him, that he had refused to set for hearing, to Attorney William Shaffer, who is not counsel for Hopkins in this case, and the records of Workers comp do not show the motions as having been filed.

(h) Hopkins gave the Commission Notice of suspension of proceedings and of this cause pending.

III

Cause for Relief

COUNT I

It is alleged based on the above facts that cause of action under 42-USC-1983 arose from the specific Defendants identified As:

*Christian Homes Inc, Timothy Phillippe CEO of Christian Homes Inc, Lewis Memorial Christian Village, Cochran Management Services inc, the Law firm of Thomas, Mamer, and Haughey, Senior partner Bruce Warren, the Illinois Workers Compensation Commission, Michael Latz, Chairman of the Illinois Workers compensation commission, Lisa Langley, Dee Dee Wagner, Laurie Hill, Paula Ryan, Amy Zayer, Doctor Michael Watson, Dr, Trudeau, Nancy Lindsay, Mario Basurto, along with two unidentified workers compensation commission members, William Gallagher, Eric Chovanec, Patrick Quinn, Governor of Illinois, the Illinois Department of Insurance Regulation, William Blumthal, St Johns Hospital, Country Companies Insurance Company, Barbara Collins,*

For reason of having by the coordinated combination of private businesses by persons employed by these businesses, and those persons who are

37

associated with these businesses, engaged in what started as a conspiracy to commit workers compensation fraud with intent to defeat a workers compensation claim in violation of the RICO act that resulted in the Homicide of Cindy Hopkins, then *combined* with State officials who proceeded to conceal the homicide and combined with the enterprise providing insurance coverage for the car accident that contributed to the homicide adopting, thus aiding and abetting the workers compensation fraud in violation of RICO/42-USC§1983 so that the enterprise did not have to pay for contributory wrongful death.   It is alleged that Criminal acts were committed with intent to promote this conspiracy, obstructing the workers compensation proceedings. All combined are defrauding Hopkins as part of a conspiracy to violate civil rights for the purpose of enriching Country Companies and Christian Homes Inc and caused damages of $1.700.000  in that;

[1]

That it is herein realleged and incorporated herein by reference as if stated in its entirety paragraphs {1} through {29} of the Statement of Case Facts, as paragraphs {2} through {30} of Count I, as if fully stated herein.

[31].

That Cindy Hopkins entitlement to workers compensation was proven, entitling her to the workplace benefit identified as a Death benefit of $10.000 dollars, and her death was circumstantially and plausibly caused by her improperly treated work place injury, Hopkins is entitled to the Funeral benefit of $8.000 dollars under the workers comp act, leaving a balance of $18.000 unpaid.

[32]

 That Cindy Hopkins was entitled to the workplace benefit identified as Temporary Total Disability benefits, (TTD) of 208 weeks of unpaid TTD amounting to $49.000 of which only 16 weeks has been paid, leaving a balance of $46.000 unpaid.

[33]

That Cindy Hopkins was entitled to compensation that was unlawfully denied entitling her to the workplace benefit identified as 19(k) sanctions of 50% of the total amount of unpaid TTD.   This amount of unpaid 19(k) penalties was $24.500.

[34]

That Cindy Hopkins was entitled to compensation that was denied unlawfully for reason of a conspiracy to commit workers compensation fraud, which entitles the estate to restitution of twice the amount of benefits Christian Homes sought to deny, that when applied to the above items 1, 2, and 3, amounts to $91.500 x2 under rule 25.5, leaving the unpaid benefits of $183.000 .

[35]

That Cindy Hopkins entitlement to workers compensation was proven, entitling her to the workplace benefit identified as a Death benefit of $500.000 under the workers compensation act, which leaves this unpaid.

[36]

That Cindy Hopkins entitlement to workers compensation was proven, entitling her to the workplace benefit identified as a Permanent Total Disability for a lifetime payment calculated at 20 years of $235 per week equaling $258.000, that is not paid.

[37]

That Cindy Hopkins entitlement to workers compensation was proven was unlawfully denied for reason of a conspiracy to commit workers compensation fraud, which entitles the estate to restitution of twice the amount of benefits Christian Homes sought to deny that when applied to the above items 5 and 6, equals $758.500, when combined with the multiplier of rule 25.5, equals $1.517.500.

That Cindy Hopkins entitlement to workers compensation was proven, and the total unpaid balance due to this 1983/RICO conspiracy to commit workers compensation fraud is of now $1. 700.000.00.

[39]

That the contributory wrongful death damages of $450.000 is for now uncollectable for reason of this conspiracy.

*Wherefore Judgment is demanded against each of the above named defendants in excess of 1.7 million dollars under 42-USC-1983.*

## COUNT II

It is alleged based on the above facts that cause of action exists under the RICO act against the specific Defendants identified herein,

*Christian Homes Inc, Timothy Phillippe CEO of Christian Homes Inc, Lewis Memorial Christian Village, Cochran Management Services inc, the Law firm of Thomas, Mamer, and Haughey, Senior partner Bruce Warren, the Illinois Workers Compensation Commission, Michael Latz, Chairman of the Illinois Workers compensation commission, Lisa Langley, Dee Dee Wagner, Laurie Hill, Paula Ryan, Amy Zayer, Doctor Michael Watson, Dr, Trudeau, Nancy Lindsay, Mario Basurto, Two unidentified workers compensation commission members, William Gallagher, Eric Chovanec, the Illinois Department of Insurance Regulation, William Blumthal, St Johns Hospital, Country Companies Insurance Company, Barbara Collins.*

In that they have by the unlawful coordinated combination of private businesses with persons employed by these businesses and those associated with these businesses, engaged in a conspiracy to commit workers compensation fraud violating the first amendment to defeat a workers compensation claim resulting in the Homicide of Cindy Hopkins, *combined* with the enterprise providing insurance coverage for the car accident that contributed to the homicide, post mortem abetting the workers compensation fraud so that the enterprise did not have to pay for contributory wrongful death above the policy limits, and also combined with state officials committing criminal acts to protect the conspirators by a pattern of conduct to conceal this conspiracy obstructing the workers compensation proceedings and thus all combined are defrauding Hopkins and thus enriching Country

Companies and Christian Homes Inc and causing damages in excess of $1.700.000, justifying damages in excess of 1.7 million dollars in that:

**[1]**

That it is herein realleged and incorporated herein by reference as if stated in its entirety paragraphs {1} through {29} of the Statement of Case Facts, as paragraphs {2} through {30} of Count II, as if fully stated herein,

*Wherefore Judgment is demanded against the above named defendants under the RICO act in excess of ten million dollars.*

Count III.

It is alleged based on the above facts that cause of action under Title II of the ADA exists for reason the specific Defendants identified herein:

*the Illinois Workers Compensation Commission, Michael Latz, Chairman of the Illinois Workers compensation commission, Nancy Lindsay, Mario Basurto, Two unidentified workers compensation commission members, William Gallagher, the Illinois Department of Insurance Regulation,*

Have refused to accommodate and then defrauded a disabled person by state officials intentionally denying access to transcripts of all of the proceedings, and denying forensic review thus obstructing the prosecution of the unlawful combination of multiple private businesses in a conspiracy to commit workers compensation fraud that resulted in the Felony Murder and/or Negligent Homicide of Cindy Hopkins, that became state action by the arbitrators committing criminal acts of obstruction of justice to protect the defendants from legal consequence of the conspiracy under state law. In addition the arbitrators blocked access to medical review and respondents for no reason other than to prevent a disabled person on a known fixed income from proving claims, imposing an impossible pleading burden on a disabled poor person and defrauded him. This is part of a pattern of conduct that poses a clear and present danger to the public that has already caused one or more deaths, defrauded Cindy's estate and defrauded Hopkins as a disabled person causing damages in excess of $1. 700.000.

41

[1]

That it is herein realleged and incorporated herein by reference as if stated in its entirety paragraphs {1} through {29} of the Statement of Case Facts, as paragraphs {2} through {30} of Count III, as if fully stated herein,

[31]

That Injunctive relief is justified as follows:

(a)     That the Court should enjoin the State Workers compensation arbitrators from denying access to transcripts when a pauper is disabled under Title II of the ADA thus enforcing the intent and purpose of rule 20 for prevention of institutional fraud that violates the first and 14th amendments.

(b)     That the Court should enjoin the State Workers compensation arbitrators from denying access without an IME to medical experts and reasonable medical care under rule 8(a) in any case of a self insured employer denying filed workers compensation claims without the prior use of an IME, so to enforce the intent and purpose of rule 8(a), and this injunction is to be effective regardless of whether or not the employee is alive or dead for the prevention of fraud and curtailment of obstruction of justice.

(c)     That the Court should enjoin the State Workers compensation arbitrators from refusing to hear and vacate judgments invalidated for reason of fraud upon the court.

*Wherefore Judgment is demanded against the above named defendants for injunctive relief  under title II of the ADA and restraining above defendants and appropriate damages.*

Count IV:

It is alleged based on the above facts that cause of action under the Workers compensation act exists against the specific Defendants identified herein:

*Christian Homes Inc, Timothy Phillippe CEO of Christian Homes Inc, Lewis Memorial Christian Village, Cochran Management Services inc, the Law firm of Thomas, Mamer, and Haughey, Senior partner Bruce Warren,*

42

*the Illinois Workers Compensation Commission, Michael Latz, Chairman of the Illinois Workers compensation commission, Lisa Langley, Dee Dee Wagner, Laurie Hill, Paula Ryan, Amy Zayer, Doctor Michael Watson, Dr, Trudeau, Nancy Lindsay, Mario Basurto, Two unidentified workers compensation commission members, William Gallagher, Eric Chovanec, the Illinois Department of Insurance Regulation, St Johns Hospital, Country Companies Insurance Company, Barbara Collins,*

For reason they have, by the unlawful coordinated combination of private businesses with persons employed by these businesses and those who are associated with these businesses, who engaged in a conspiracy to commit workers compensation fraud to defeat a workers compensation claim resulting in the Homicide of Cindy Hopkins, *combined* with the enterprise providing insurance coverage for the car accident that contributed to the homicide, post mortem abetting the workers compensation fraud so that the enterprise did not have to pay for contributory wrongful death above the policy limits, and also combined with state officials committing criminal acts to protect the conspirators by a pattern of conduct to conceal this conspiracy obstructing the workers compensation proceedings and thus all combined are defrauding Hopkins and thus enriching Country Companies and Christian Homes Inc and causing damages in excess of $1.700.000.

[1]

That it is herein realleged and incorporated herein by reference as if stated in its entirety paragraphs {1} through {29} of the Statement of Case Facts, as paragraphs {2} through {30} of Count IV, as if fully stated herein.

*Wherefore Judgment is demanded against the above named defendants for violation of the Workers comp act rule 25.5 in excess of 1.7 million dollars.*

Count V:

It is alleged based on the above facts that cause of action for wrongful death exists against the specific Defendants identified herein:

*Christian Homes Inc, Timothy Phillippe CEO of Christian Homes Inc, Lewis Memorial Christian Village, Cochran Management Services inc, the Law firm of Thomas, Mamer, and Haughey, Senior partner Bruce Warren, Lisa Langley, Dee Dee Wagner, Laurie Hill, Paula Ryan, Amy Zayer, Doctor Michael Watson, Dr, Trudeau, the Illinois Department of Insurance Regulation, St Johns Hospital.*

43

`

Have allegedly caused wrongful death by the combination of three private businesses and participating persons in a conspiracy to commit workers compensation fraud that resulted in the Felony Murder and/or Negligent Homicide of Cindy Hopkins, A wrongful death that became state action by state officials committing criminal acts to protect the defendants from legal consequence of the conspiracy under state law. This defrauded Cindy's estate, causing damages in excess of $700.000.

[1]

That it is herein realleged and incorporated herein by reference as if stated in its entirety paragraphs {1} through {29} of the Statement of Case Facts, as paragraphs {2} through {30} of Count V, as if fully stated herein,

*Wherefore Judgment is demanded under* 740 ILCS 180/0.01 *against the above named defendants in excess of $700.000 each for wrongful death.*

Count VI:

It is an alleged tort of negligent spoliation based on the above facts that the specific Defendants identified herein:

*Christian Homes Inc, Timothy Phillippe CEO of Christian Homes Inc, Lewis Memorial Christian Village, Cochran Management Services inc, the Law firm of Thomas, Mamer, and Haughey, Senior partner Bruce Warren, the Illinois Workers Compensation Commission, Michael Latz, Chairman of the Illinois Workers compensation commission, Lisa Langley, Dee Dee Wagner, Laurie Hill, Paula Ryan, Amy Zayer, Doctor Michael Watson, Dr, Trudeau, Nancy Lindsay, Mario Basurto, Two unidentified workers compensation commission members, William Gallagher, Eric Chovanec, the Illinois Department of Insurance Regulation, St Johns Hospital,*

Have allegedly spoliated the case by use of fraud to prevent the making of legitimate records, and corruption of medical records by the unlawful combination of three private businesses in a conspiracy to commit workers compensation fraud that resulted in the Homicide of Cindy Hopkins, that became state action by state officials committing criminal acts to protect the defendants from legal consequence of the conspiracy under state law. Evidence was tampered with, destroyed, and prevented from being made, and obstructed by state action for the illegal purpose of promoting a RICO

44

conspiracy to commit workers compensation fraud. This is part of a pattern of conduct by preventing proof of claims that poses a clear and present danger to the public that has already caused one or more deaths, defrauded Cindy's estate, while causing damages in excess of $1. 700.000.

[1]

That it is herein realleged and incorporated herein by reference as if stated in its entirety paragraphs {1} through {29} of the Statement of Case Facts, as paragraphs {2} through {30} of Count VI, as if fully stated herein,

[31]

That spoliation of case records is a natural consequence of a conspiracy to commit fraud that justifies default damages for the entire claim that a party is entitled to, but is unable to prove due to the conspiracy destroying and preventing making of records.

*Wherefore Judgment is demanded against the above named defendants in excess of* $1. 700.000.

Count VII:

It is an alleged tort of unjust enrichment based on the above facts that the specific Defendants identified herein:

*Christian Homes Inc, Timothy Phillippe CEO of Christian Homes Inc, Lewis Memorial Christian Village, Cochran Management Services inc, the Law firm of Thomas, Mamer, and Haughey, Senior partner Bruce Warren, the Illinois Workers Compensation Commission, Michael Latz, Chairman of the Illinois Workers compensation commission, Lisa Langley, Dee Dee Wagner, Laurie Hill, Paula Ryan, Amy Zayer, Doctor Michael Watson, Dr, Trudeau, Nancy Lindsay, Mario Basurto, Two unidentified workers compensation commission members, William Gallagher, Eric Chovanec, the Illinois Department of Insurance Regulation, St Johns Hospital, Country Companies Insurance Company, Barbara Collins,*

Have spoliated the case precluding any possibility of due process resulting in the Unjust enrichment of one or more criminal enterprises by the unlawful combination of three private businesses in a RICO based conspiracy to commit workers compensation fraud that resulted in the Homicide of Cindy Hopkins, that became state action by state officials committing criminal acts

45

and felony fraud of a disabled person as Evidence was tampered with, destroyed, and prevented from being made, and access to records and those who could make records was obstructed by state and private action for the illegal purpose of promoting a RICO conspiracy to commit workers compensation fraud. This is part of a pattern of conduct by preventing proof of claims that poses a clear and present danger to the public that has already caused one or more deaths, defrauded Hopkins of Cindy's estate, causing damages in excess of $1. 700.000.

[1]

That it is herein realleged and incorporated herein by reference as if stated in its entirety paragraphs {1} through {29} of the Statement of Case Facts, as paragraphs {2} through {30} of Count VII, as if fully stated herein,

*Wherefore Judgment is demanded for unjust enrichment against the above named defendants in excess of 1.7 million dollars.*

Count VIII:

It is an alleged tort of egregious emotional harm and distress based on the above facts that the specific Defendants identified herein:

*Christian Homes Inc, Timothy Phillippe CEO of Christian Homes Inc, Lewis Memorial Christian Village, Cochran Management Services inc, the Law firm of Thomas, Mamer, and Haughey, Senior partner Bruce Warren, Lisa Langley, Dee Dee Wagner, Laurie Hill, Paula Ryan, Amy Zayer, Doctor Michael Watson, Dr, Trudeau, St Johns Hospital, Nancy Lindsay, Mario Basurto, Two unidentified workers compensation commission members, William Gallagher, Eric Chovanec, the Illinois Department of Insurance Regulation,*

Have caused egregious emotional distress by the unlawful combination of private businesses in a conspiracy to commit workers compensation fraud that resulted in the Homicide of Cindy Hopkins, that then became state action by state officials committing criminal acts to protect the defendants from legal consequence of the conspiracy under state law for the illegal purpose of promoting a RICO conspiracy. This aggravated the injury while denying access to proper medical care to prevent proof of claims for just closure. This is part of a pattern of conduct that caused severe harm

46

compounded by state action deliberately preventing proof of claims that poses a clear and present danger to the public that has already caused one or more deaths, defrauded Hopkins and Cindy's estate, while causing damages in excess of $1. 700.000.

[1]

That it is herein realleged and incorporated herein by reference as if stated in its entirety paragraphs {1} through {29} of the Statement of Case Facts, as paragraphs {2} through {30} of Count VIII, as if fully stated herein,

*Wherefore Judgment is demanded against the above named defendants in excess of 1,7 million dollars.*

IV.

NOW COMES PLAINTIFF, GLENN J. HOPKINS, complaining against the DEFENDANT MARY BAUMAN and states as follows:

1. That at all times relevant to approximately 4:05 pm on or about the sixteenth day of April, 2006, the Plaintiff, GLENN HOPKINS was the operator of a certain motor vehicle identified as a white 1987 Mercury Cougar that was owned by CINDY HOPKINS, insured by Safe Auto Insurance Company under policy IL00018628a00, which was stopped in a generally southerly direction on 11th street in the intersection with Madison street in the City of Springfield, County of Sangamon, State of Illinois.

2. That at all times relevant to approximately 4:05 pm on or about the sixteenth day of April, 2006, the Defendant MARY BAUMAN, was the owner and operator of a vehicle identified as a 2001 Chevy Blazer operated by Defendant Mary Bauman, insured by Country Companies, under policy # a12a3272250, proceeding in a generally southerly direction on 11th street at or near the intersection with Madison street in the City of Springfield, County of Sangamon, State of Illinois.

3. That at all times relevant on the date in question, the Defendant Mary Bauman owed a duty to the Plaintiff(s) to exercise ordinary care and caution with respect to her operation of Defendants motor vehicle on the public streets and roadways.

47

4. That notwithstanding that duty, the Defendant Mary Bauman was then and there guilty of the following careless and negligent acts and omissions:

A. Carelessly and negligently failed to stop Defendants vehicle to prevent the vehicle from coming into  contact with the Plaintiffs vehicle which had the right of way;

B. Carelessly and negligently pulled into the intersection of 11th and Madison when it was not safe to do so resulting in an accident;

C. Carelessly and negligently failed to stop or swerve Defendants vehicle to avoid a collision with Hopkins stopped vehicle; and;

D. Carelessly and negligently operated Defendants motor vehicle at a speed excessive under the circumstances resulting in an accident.

5. As a direct and proximate result of one or more of the aforesaid negligent acts or omissions of Defendant Mary Bauman, Plaintiff Glenn Hopkins was damaged and sustained severe permanent physical injury, and has aggravated prior existing injury which have caused severe pain and will continue in the future to cause pain and suffering.

Wherefore the Plaintiff,  GLENN J HOPKINS, prays that a judgment be entered against Defendant Mary Delaney aka Bauman in excess of Fifty Thousand dollars ($50.000) together with attorney fees and costs of this suit.

Count VI

NOW COMES PLAINTIFF, CINDY HOPKINS (DECEASED) BY GLENN J. HOPKINS, Appointed Administrator, complaining of wrongful death against the Defendant, Mary Delaney aka Bauman, states as follows:

1. That at all times relevant to approximately 4:05 pm on or about the sixteenth day of April, 2006, the Plaintiff,  CINDY HOPKINS was the owner and passenger of a certain motor vehicle identified as a white 1987 Mercury Cougar that was insured by Safe Auto Insurance Company under policy IL00018628a00, which was stopped in a generally southerly direction on 11th street at or near the intersection with Madison street in the City of Springfield, County of Sangamon, State of Illinois.

2. That at all times relevant at approximately 4:05 pm on or about the sixteenth day of April, 2006, the Defendant MARY BAUMAN, was the owner and operator of a vehicle identified as a 2001 Chevy Blazer operated by Defendant Mary Bauman, insured by Country Companies, under policy # a12a3272250,  in a generally southerly direction on 11th street at or near the intersection with Madison street in the City of  Springfield, County of Sangamon, State of Illinois.

3. That at all times relevant on the date in question, the Defendant Mary Bauman owed a duty to the Plaintiff(s) to exercise ordinary care and caution with respect to operation of Defendants motor vehicle on the public streets and roadways.

4. That notwithstanding that duty, the Defendant Mary Bauman was then and there guilty of the following careless and negligent acts and omissions:

A. Carelessly and negligently failed to stop Defendants vehicle to prevent it from coming into  contact with Plaintiff's vehicle that had the right of way;

B. Carelessly and negligently pulled into the intersection when it was not safe to do so resulting in a foreseeable accident:

C. Carelessly and negligently failed to stop or swerve Defendants vehicle to avoid a collision; and;

D. Carelessly and negligently operated Defendants motor vehicle at a speed excessive under the circumstances resulting in an accident.

5. That Cindy Sue Hopkins, at the time and place of the above alleged motor vehicle accident on April 16, 2006, was prior injured and recovering from surgery which was again injured, resulting in death as follows:

{A} That Cindy suffered a rupture of her diaphragm due to Aggravated Battery in the workplace on July 27, 2005, and was denied medical treatment for reason of workers compensation fraud resulting in indigence, see in Re; Cindy Hopkins (deceased) v Christian Homes, Case # 10 WC 012571.

{B} That Cindy's workplace injury to her ruptured diaphragm was surgically repaired as an indigent on or about March 7, 2006 by Dr.

49

Hazelrigg, at issue in another proceeding, note in Re; Cindy Hopkins (deceased) v Christian Homes, Case # 10 WC 012571.

{C} That the impact allegedly ruptured Cindy Hopkins surgically repaired diaphragm resulting in a subsequent severe paraeshopogeal hernia that eventually resulted in liver failure and death.

6. As a direct and proximate result of one or more of the aforesaid negligent acts or omissions of Defendant Mary Bauman, Plaintiff CINDY HOPKINS property was damaged, and Cindy sustained severe permanent physical injury, and aggravated prior existing injury which RESULTED IN DEATH.

Wherefore the Plaintiff, GLENN J HOPKINS on behalf of Cindy Hopkins deceased, prays that a judgment be entered against Defendant Mary Delaney aka Bauman in excess of Fifty Thousand dollars ($50.000) together with attorney fees and costs of this suit.

Count VIII.

That it is herein alleged that a motor vehicle accident occurred resulting in personal injury to the above named plaintiffs and the alleged subsequent wrongful death of Cindy Hopkins for which Country Companies refused to settle for wrongful death, entitling Plaintiff and the estate to damages in excess of $50.000.

1. That at all times relevant at approximately 4:05 pm on or about the sixteenth day of April, 2006, the Plaintiff, GLENN HOPKINS was the operator of a certain motor vehicle identified as a white 1987 Mercury Cougar that was owned by CINDY HOPKINS, insured by Safe Auto Insurance Company under policy IL00018628a00, which was stopped in a generally southerly direction on 11th street at or near the intersection with Madison street in the City of Springfield, County of Sangamon, State of Illinois.

2. That at all times relevant at approximately 4:05 pm and on or about the sixteenth day of April, 2006, the Defendant MARY BAUMAN was the owner and operator of a vehicle identified as a 2001 Chevy Blazer operated by

50

Defendant Mary Bauman, insured by Country Companies, under policy # a12a3272250, proceeding in a generally southerly direction on 11th street at or near the intersection with Madison street in the City of Springfield, County of Sangamon, State of Illinois.

3. That at all times relevant on the date in question, the Defendant Mary Bauman owed a duty to the Plaintiff(s) to exercise ordinary care and caution with respect to operation of Defendants motor vehicle on the public streets and roadways.

4. That notwithstanding that duty, the Defendant Mary Bauman was then and there guilty of the following careless and negligent acts and omissions:

A. Carelessly and negligently failed to stop Defendants vehicle to prevent it from coming into contact with plaintiff's vehicle that had the right of way;

B. Carelessly and negligently pulled into the intersection when it was not safe to do so resulting in an accident:

C. Carelessly and negligently failed to stop or swerve Defendants vehicle to avoid a collision; and;

D. Carelessly and negligently operated Defendants motor vehicle at a speed excessive under the circumstances resulting in a foreseeable accident.

5. As a direct and proximate result of one or more of the aforesaid negligent acts or omissions of Defendant Mary Bauman, Plaintiff Glenn Hopkins was damaged and sustained severe permanent physical injury, and has aggravated prior existing injury which have caused severe pain and will continue in the future to cause pain and suffering.

6. That Cindy Sue Hopkins, at the time and place of the above alleged motor vehicle accident on April 16, 2006, was prior injured as follows:

{A} That Cindy suffered a rupture of her diaphragm, due to aggravated battery in the workplace on July 27, 2005, and was denied medical treatment for reason of workers compensation fraud, see in Re; Cindy Hopkins (deceased) v Christian Homes, Case # 10 WC 012571.

51

{B} That Cindy's workplace injury to her ruptured diaphragm was surgically repaired on or about March 7, 2006 by Dr. Hazelrigg, at issue in another proceeding, note in Re; Cindy Hopkins (deceased) v Christian Homes, Case # 10 WC 012571.

{C} That the impact allegedly ruptured Cindy Hopkins surgically repaired diaphragm resulting in a subsequent severe paraeshopogeal hernia that eventually resulted in death.

7. As a direct and proximate result of one or more of the aforesaid negligent acts or omissions of Defendant Mary Delaney aka Bauman, Plaintiff CINDY HOPKINS  property was damaged, and Cindy sustained severe permanent physical injury, and aggravated prior existing injury which have caused severe pain and RESULTED IN DEATH.

8. That on or shortly thereafter the date of 4/21/2011, a settlement demand for the policy limit was made upon Barb Collins in her capacity as attorney for Country Companies, which was refused in alleged bad faith.

9. That Barbara Collins in bad faith committed records tampering......

Wherefore the Plaintiff,  GLENN J HOPKINS on behalf of Cindy Hopkins deceased, prays that a judgment be entered against Defendant Mary Bauman for reason of her insurance company refusing in Bad Faith failure to Settle for wrongful death in excess of Fifty Thousand dollars ($50.000).

## VERIFICATION

I, Glenn Joseph Hopkins, of legal age and competent to testify, being duly sworn under oath, presents that I am the plaintiff of this action, I know the contents of the complaint, and that the information in the complaint is true to the best of my knowledge and belief.

I also herein do attest and affirm under the known penalty of Perjury that the foregoing is true based on being a witness to the matters in controversy, and that the evidence contained within the document identified as Complaint Evidence Affidavit in support of this complaint is true and correct except as

52

to statements made upon information and belief, and as to those statements made upon information and belief, I do believe them also to be true.

Witness my hand under the penalties of perjury this _12/29/2014_

_Glenn J Hopkins_
Signature

Signed and sealed before me in my capacity as Notary Public, on this _12/29/14_ of 2014. This person presented evidence of his identity. In the form of _IL DRIVERS LICENSE_

Signature: _Shawn P Duval_

My commission expires: _____

OFFICIAL SEAL
SHAWN P DUVAL
Notary Public - State of Illinois
My Commission Expires May 15, 2017

53